ALVAREZ, DEMANDANTE Y APELADO, *v.* DIMAS, DEMANDADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 1ª., en un caso sobre devolución de cantidad y daños y perjuicios.

No. 1072.—Resuelto en junio 5, 1914.

MANDATO—VENTA DE UNA CASA POR UN PRECIO MAYOR DEL FIJADO EN EL MANDATO—PAGO DE COMISIÓN A UN AGENTE.—La evidencia aportada al juicio muestra por modo claro que el demandado tenía poder bastante para la venta de la casa por el precio de $2,200; que la venta se hizo por medio de Salvador Bugellas; que el precio de la venta satisfecho por el comprador Ruiz Arnau fué de $2,500; que de esa cantidad fué satisfecha a Salvador Bugellas la suma de $300 por su intervención en el negocio y que del resto de $2,200 rindió cuenta el apoderado a su poderdante. *Se resolvió* que el demandado actuó de buena fe dentro de los límites de su mandato, sin fraude alguno, y que no se probó que se apropiara fraudulentamente la cantidad de $300 que pagó al agente y por tanto no estaba obligado a restituir dicha cantidad al demandante.

ID.—VENTA POR UN MANDATARIO A UN AGENTE Y VENTA POR ESTE A UN TERCERO—OTORGAMIENTO DE ESCRITURA DIRECTAMENTE AL SEGUNDO COMPRA-

dor.—Examinada la prueba presentada en este caso *se resolvió* que nó constituía fraude alguno el hecho de que el demandado actuando dentro de los límites del mandato que le otorgó el demandante vendiera la casa a a Bugellas en $2,200 y que éste la vendiera a Ruiz Arnau en $2,500, y que el demandado le otorgara escritura directamente a Ruiz Arnau por $2,500, habiendo recibido el poderdante la cantidad de $2,200 y Bugellas la diferencia de $300.

Fraude—Circunstancias Susceptibles de una Explicación Natural y Probable.—El fraude puede inferirse de hechos y circunstancias, pero cuando esos hechos son susceptibles de una explicación natural y probable compatible con la buena fe y honradez de las partes, no prueban el fraude y la conclusión legal está a favor de la inocencia.

Los hechos expresados en la opinión.

Abogado del apelado: *Sr. Jacinto Texidor.*

Abogados del apelante: *Sres. Bosch y Soto.*

El Juez Presidente Sr. Hernández, emitió la opinión del tribunal.

El presente pleito se originó en la Sección Primera de la Corte de Distrito de San Juan mediante demanda presentada en 28 de septiembre de 1912 por Rafael A. Llaneza contra José Dimas Ricra, cuyas alegaciones fundamentales son las siguientes:

*Primera.* Que en 30 de octubre de 1902 Olegario Riera, diciéndose mandatario verbal de Rafael Alvarez Llaneza, vendió a Ramón Ruiz Arnau una finca urbana de la propiedad del demandante por precio de $2,500, según escritura otorgada ante el Notario Don Juan de Guzmán Benítez, cuya venta fué ratificada por el demandado José Dimas Riera apoderado del demandante, mediante ·escritura pública de 17 de noviembre siguiente.

*Segunda.* Que José Dimas Riera hizo creer al poderdante Llaneza, que la venta se había efectuado por $2,200, habiendo retenido en su poder y apropiádose indebidamente, del precio real de $2,500, la cantidad de $300 a saber, $200 de la parte de precio que fué satisfecha de contado y $100 de los plazos estipulados en la escritura.

*Tercera.* Que por virtud de esos actos fraudulentos del demandado, el demandante ha estado privado desde 30 de octubre de 1902 de la expresada cantidad de $300 y de los

beneficios que la misma le hubiera reportado, ocasionándosele perjuicio por la suma de $360 hasta la fecha de la interposición de la demanda.

La demanda concluye con la súplica de que se condene al demandado a pagar al demandante la suma de $660, importe del capital usurpado y de los perjuicios causados, con más los intereses legales sobre la expresada suma a contar desde la fecha de la demanda, y las costas, desembolsos y honorarios de abogado.

El demandado al contestar la demanda alega que él informó a Rafael A. Llaneza de que el precio real obtenido por la venta de la casa era de $2,200 que cubría las pretenciones del vendedor de las que estaba instruído el apoderado, pues aunque el comprador Ruiz Arnau satisfizo $2,500 y ese es el precio consignado en la escritura, es lo cierto que de dichos $2,500 se pagaron al agente que intervino en la venta, Don Salvador Bugella, $300 por su gestiones para la venta de la casa, habiendo percibido la sociedad Riera Hermanos como producto líquido de la venta, $2,200 que fueron abonados a la cuenta de R. A. Llaneza, habiendo ratificado éste los actos ejecutados por José Dimas Riera y Riera Hermanos en la expresada negociación.

Celebrado el juicio la Corte de Distrito de San Juan, Sección Primera, dictó sentencia en 23 de septiembre de 1913 por la que declara con lugar la demanda y en su consecuencia condena a la parte demandada a pagar al demandante la suma de $300 con sus intereses legales desde la fecha de la presentación de la demanda hasta su completo pago, más las costas y desembolsos que se originen.

Contra esa sentencia interpuso la representación del demandado recurso de apelación para ante esta Corte Suprema, y alega como fundamento del mismo, error cometido en la apreciación de las pruebas.

Examinemos el resultado de dichas pruebas:

(*a*) Por escritura pública otorgada en 30 de octubre de 1912 Don Rafael Alvarez Llaneza por su mandatario verbal

Don Olegario Riera vendió a Don Ramón Ruiz Arnau la casa de que se trata, por precio de $2,500, a saber, $1,200 de contado y el resto a plazos, uno de $400 a vencer en 31 de enero del año siguiente, otro también de $400 a vencer en 31 de julio del mismo año, y el tercero de $500 a pagar el 31 de enero de 1904.

(*b*) Esa escritura fué ratificada por otra de 17 de noviembre de 1902 por Don José Dimas Riera como apoderado de Alvarez Llaneza.

(*c*) Por otra escritura de 1 de febrero de 1904 Don José Dimas Riera como apoderado de Don Rafael Alvarez Llaneza otorgó a favor de Don Ramón Ruiz Arnau carta de pago.

(*d*) Con fecha 3 de Diciembre de 1902 el demandado José Dimas Riera escribió al demandante Rafael Alvarez Llaneza, Olloniego, Asturias, una carta de la cual transcribimos los siguientes conceptos relativos a la negociación de la casa:

"La venta de la casa fué realizada en la forma siguiente:

| | |
|---|---:|
| Contado | $1,000 |
| Para 28 de febrero próximo | 600 |
| Para 30 de septiembre | 600 |
| Total | $2,200 |

"Cuando yo salí en mi último viaje, de acuerdo con sus instrucciones, estaba gestionando la venta de la casa, y hasta aquel momento nada se había podido hacer; pero siguieron las gestiones y antes de yo llegar hizo la venta Olegario, por creerla buena; operación que yo rectifiqué como apoderado suyo, una vez llegué. Yo no hubiera aceptado la operación sin su consulta, pero hubiera dado por resultado que la venta no se hubiera realizado, ya por que hubiera comprado otra, ya porque se hubiera fijado mejor en la casa como hizo después; ella fué vendida a Salvador Bugella en la suma de $2,200, y éste la vendió al Doctor Ruiz Arnau, cuyo señor otorgó primera hipoteca sobre la finca de mérito, para pagar según los plazos que le dejo apuntados más atrás; hecha la operación para el Bugella ya la hizo para el Ruiz Arnau, y luego tuvieron una diferencia, con la cual fueron al Juzgado, pero nada pudo sacar el segundo, y tuvo que hacerse cargo de la casa; la casa estaba más mala de lo que creía, porque casi no la había visto más que por fuera, y todo ésto se lo hizo notar

Don Tulio Larrínaga, cuando supo que la había comprado, porque
él le quería vender otra. Resumen de todo, es que tiene la escritura
de la casa y quien también tiene la hipoteca, me hizo la siguiente pro-
posición, la que yo no le acepto, pero le dije que era un asunto que no
dependía de mí, sino de Vd. toda vez que ya le había remesado la
entrega que había hecho. De los 1,000 pesos que dió a cuenta, el
pierde 200 y que se le devuelvan $800 pasando a su favor nuevamente
la casa; en caso que usted esté conforme—avíseme a vuelta de vapor,
yo desde luego le aconsejaría que no lo admitiera, por que la casa está
perdida, y dentro de dos años, aparte de que tiene gastarse en ella
ahora un buen pico, la tendrá que echar al suelo, es una casa hecha de
retazos, y ahora que se está poniendo más vieja, es que se va notando,
pues cuando se arregla por un lado se desarregla por otro; pero
Vd. puede hacer lo que le plazca, la proposición la sostiene, el negocio
para usted creo es bueno, la casa no vale más, ni tampoco tanto en las
condiciones está, a mí como no dejará de comprender, ni me vá ni
me viene en caso semejante; *   *   *.

&ast;         &ast;         &ast;         &ast;         &ast;         &ast;         &ast;

"Sírvase encontrar adjunto nuestro giro, número 52 a s/fr. y c/
de Don Mateo Rucabado, 255 Pearl St., por la suma de $1,000 los
cuales son el importe de la entrega que a ésta casa fué entrada por el
concepto de la venta de la casa suya, dicho giro es en oro corriente
en esta, de los Estados Unidos."

El demandado José Dimas Riera, presentado como tes-
tigo por ambas partes, declara que tenía poder general del
demandante Rafael Alvarez Llaneza con cláusula para vender
e instrucciones para verificar la venta de la casa de Alvarez
Llaneza, por precio de $2,000 en adelante; que él no inter-
vino personalmente en la venta de la casa, sino su hermano
Olegario a quien había comisionado para ello; que a su re-
greso de New York, donde a la sazón estaba, le informó su
referido hermano de haber hecho la venta a Ruiz Arnau por
conducto de Salvador Bugella a quien se le había señalado
como precio mínimo para la venta, la cantidad de $2,200 per-
cibiendo Bugella el mayor precio que obtuviera sobre aquella
cantidad; que la información que le dió su hermano fué que
Bugella había puesto el precio para sí en $2,200 suplicándole
luego el Bugella, que aunque él había adquirido la casa, hiciera

la escritura directamente a Ruiz Arnau, pues a éste la había vendido; que bajo dicha información fué que escribió a Llaneza la carta de 3 de diciembre de 1902, siendo esa la razón de las contradicciones existentes entre la carta y la escritura de venta de que se deja hecho mérito, pero al apercibirse de tal contradicción escribió a su poderdante una carta aclarándolo todo y haciéndole saber que se le habían pagado $300 a Bugella, creyendo que el copiador en que estaba copiada la carta haya sido quemado junto con otros libros, en atención al tiempo transcurrido, y que en cuenta rendida a Llaneza sólo se dió ingreso a la suma de $2,000 que es el producto líquido de la venta de la casa después de percibir Bugella los $300 que le correspondían como exceso sobre la cantidad de $2,200 fijada para la venta.

Rafael Baragaño, testigo del demandado y socio de éste, dice que la casa fué vendida a Ruiz Arnau, sin que sepa por qué preció, y que a Bugella se le señaló por Don Olegario Riera para la venta, el precio de $2,200, debiendo ser para él la diferencia que obtuviera en el negocio.

Salvador Bugella, testigo también del demandado, declara que a fines del año de 1902 le propuso Olegario Riera el negocio de la venta de una casa señalándole como precio de ella $2,200 y quedando a su favor la mayor cantidad que obtuviera; que se hizo cargo de la venta y entre otras personas propuso el negocio a Ruiz Arnau, quien convino en comprar la casa por $2,500, de los cuales recibió $2,200 la casa de Riera, y el testigo $300 por razón de la comisión, los que le fueron entregados por Olegario Riera.

En las cartas de Riera Hermanos que escribieron a Don Rafael Alvarez Llaneza con fecha 6 de octubre de 1903, 23 de noviembre del propio año, 28 de enero de 1904, y 8 de junio del mismo año, como tampoco en las liquidaciones de cuentas rendidas por la misma sociedad a Llaneza, no hay partida alguna relativa a los $300 satisfechos a Bugella por el negocio de la venta de la casa o a que dicha venta se hiciera por $2,500, y antes por el contrario en una de esas liquidaciones

de cuentas se abona a Llaneza la suma de $2,200 por la venta de su casa de Santurce.

Tales son los elementos probatorios aportados al juicio, y considerándolos con sujeción a las reglas de evidencia, opinamos que ellos no sostienen la sentencia apelada.

Es perfectamente claro, según alega la parte apelante, tanto por la contestación como por la demanda, que la reclamación del demandante tiene por objeto recobrar cantidades que el demandado, su mandatario, se apropió indebidamente durante la vigencia del mandato, y se hace depender la ilegalidad de tal apropiación del fraude empleado por dicho mandatario con tal fin.

La evidencia aportada al juicio muestra por modo claro que el demandado José Dimas Riera tenía poder bastante de Rafael Alvarez Llaneza para la venta de la casa; que la venta se hizo por medio de Salvador Bugella; que el precio de la venta satisfecho por el comprador Ruiz Arnau fué de $2,500; que de esa cantidad fué satisfecha a Salvador Bugella la suma de $300 por su intervención en el negocio, y que del resto de $2,200 rindió cuenta el apoderado a su poderdante.

No hay la más ligera indicación de que José Dimas Riera se apropiara en su beneficio cantidad alguna del producto de la venta de la casa según se alega en la demanda, y ya sea que Salvador Bugella aceptara para si el negocio de la compra de la casa por precio de $2,200 con el fin de venderla y lucrarse con el mayor producto que obtuviera, bien sea que obrara como agente del demandado bajo la base de que si vendía la casa por más de $2,200 percibiría el exceso de esa cantidad como remuneración de su trabajo, remuneración que en efecto recibió consistente en $300, siempre resultaría que el demandado, lejos de proceder con fraude procedió con buena fe al abonar en cuenta a su poderdante la suma de $2,200 como producto líquido de la venta de la casa.

Ciertamente que no aparece que Riera diera cuenta a Alvarez Llaneza de los términos en que realmente había sido hecha la venta de la casa por escritura de 30 de octubre de 1902

ratificada posteriormente, según la cual la venta había sido hecha por $2,500; pero es de notar que en la carta de 3 de diciembre del mismo año a raíz de la negociación, Riera dió cuenta a Llaneza de haber sido vendida la casa a Salvador Bugella en la suma de $2,200 habiéndola vendido luego Bugella al Dr. Ruiz Arnau, sin que en la carta exprese por qué precio, y carta y escritura pueden armonizarse entendiendo la primera en el sentido de que la casa fué vendida a Bugella en $2,200 y que luego Bugella la vendió a Ruiz Arnau en $2,500, habiéndose consignado en la escritura de venta hecha por Riera a Ruiz Arnau el precio de $2,500 por ser esa la realidad de la venta hecha por Bugella a Ruiz Arnau, por más que Riera sólo hubiera de percibir $2,200 quedando los $300 restantes para Bugella según el convenio habido.

No vemos fraude alguno empleado por Riera para perjudicar a su poderdante, y antes por el contrario la falta de malicia en su proceder aparece evidenciada con el hecho de haber dado cuenta a su poderdante de que la venta se realizó por $2,200, y sin embargo en la escritura consignó que se hacía por $2,500 proporcionando así al poderdante una prueba del engaño que se supone cometido. Si Bugella no hubiera tenido intervención en la venta de la casa, no había motivo alguno para que Riera se la diera en la carta de 3 de diciembre de 1902 dirigida a Alvarez Llaneza. Aquel la tuvo realmente, y como el mismo Bugella vendió la casa por $2,500 al Dr. Ruiz Arnau, no era posible otorgar la escritura sin que en ella se hiciera constar ese precio de $2,500 y no el de $2,200 convenido entre Riera y Bugella. Ruiz Arnau no hubiera firmado la escritura de venta por precio de $2,200 cuando él pagaba $2,500.

No se ha alegado en la demanda que Riera traspasara los límites del mandato vendiendo la casa por el precio de $2,200 que fué el que recibió Llaneza, ni tampoco se ha pretendido que rindiera cuenta a su poderdante de la suma de $2,500 en que se hizo la dicha venta, según la escritura de que dejamos hecho mérito. Sólo se ha pretendido como hemos

dicho antes, la restitución por el demandado al demandante, de la suma de $300 de que se ha apropiado indebida y fraudulentamente, y no cabe variar los términos del debate judicial. El hecho fundamental de la demanda no se ha justificado.

"El fraude," como dice el ilustrado tratadista Moore, "puede inferirse de hechos y circunstancias, pero cuando esos hechos son susceptibles de una explicación natural y probable, compatible con la buena fé y honradez de las partes, no prueban el fraude y la conclusión legal está a favor de la inocencia."

Moore on Facts, Vol. I, pp. 82–83.

Por los razones expuestas es de. revocarse la sentencia apeladas, absolviendo de la demanda al demandado, sin especial condenación de costas.

> *Revocada la sentencia apelada y declarada sin lugar la demanda sin especial condenación de costas.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro y Aldrey.

El Juez Asociado Sr. Hutchison no formó parte del tribunal en la vista de este caso.